IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

WELLS FARGO FINANCIAL LEASING, INC.                    PLAINTIFF

V.                                  CIVIL ACTION NO. 2:15-CV-160-KS-MTP

WALTER T. POPE                                         DEFENDANT

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** both Plaintiff's Motion for Summary Judgment [18] on its conversion claim and its Motion for Summary Judgment [19] on Defendant's counterclaims.

### I. BACKGROUND

Defendant's son, Aaron Pope, was an independent poultry farmer in Covington County, Mississippi, under contract with Sanderson Farms, Inc. Aaron Pope financed his operation by sale-leaseback arrangements and/or loans secured by farm equipment from Defendant, Wells Fargo Financial Leasing, Inc. *See* Exhibits A-L to Complaint, *Wells Fargo Fin. Leasing, Inc. v. Pope*, No. 2:15-CV-160-KS-MTP (S.D. Miss. Dec. 10, 2015), ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13. He repaid Wells Fargo via a "Poultry Proceeds (Security Agreement) And Notice to Buyer," pursuant to which Sanderson Farms remitted $17,540.00 from the proceeds of every poultry flock grown by Aaron Pope directly to Wells Fargo, while paying the remaining balance to Pope. See Exhibit G, ECF No. 1-8.

Around 2013, Aaron Pope filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. Before he filed for bankruptcy, he

transferred his grower contract with Sanderson Farms to Defendant, Walter Pope. Aaron Pope grew four poultry flocks for Sanderson Farms under Defendant's grower contract, using the equipment which Wells Fargo either owned and/or in which it possessed a security interest. Sanderson Farms did not deduct and remit payments to Wells Fargo from the proceeds of these final four flocks because Defendant, Walter Pope, was not subject to a proceeds assignment. Defendant then transferred the funds to his son or used them to pay his son's other creditors.

Plaintiff filed this action against Defendant, asserting claims of conversion, tortious interference with contract, tortious interference with business relations, and unjust enrichment. Defendant asserted counterclaims of negligence, defamation, "bad faith prosecution," abuse of process, and malicious prosecution. Plaintiff filed Motions for Summary Judgment [18, 19] as to its conversion claim and Defendant's counterclaims.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

2

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *Conversion*

Plaintiff contends that Defendant converted proceeds from the sale of poultry flocks which it was owed under the various security and financing agreements entered into by Aaron Pope. "To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998). The plaintiff must present "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property." *Greenline Equip. Co. v. Covington County Bank*, 873 So. 2d 950, 955 (Miss. 2002). Phrased differently, the defendant must have exercised "some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession

3

under a claim of right or title inconsistent with that of plaintiff." *Id.* The plaintiff's interest in the property must have been "made known and resisted . . . ." *Id.* In summary, to prove a conversion claim, Plaintiff must demonstrate that it had a right or interest in the disputed property, that Defendant knew of its right or interest, and that he exercised control or dominion over the property in exclusion of its right or interest. *Id.*; *see also Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 773-74 (Miss. 2004).

First, the Court must determine whether Plaintiff had any right to the disputed poultry flock proceeds. According to the Poultry Proceeds (Security Agreement), Aaron Pope was obligated pay Plaintiff "the sum of $17,540.00 per flock, 5 flocks per year, payable . . . UNTIL FURTHER NOTICE." Exhibit G, [1-8]. It is undisputed that Aaron Pope failed to make four payments to Plaintiff from the final four flocks he raised, defaulting on his obligations under the Poultry Proceeds (Security Agreement).

Aaron Pope also entered into various Security Agreements [1-4, 1-5, 1-6, 1-7] related to his leases with Plaintiff. Under three of the Security Agreements, an event of default was "[a]ny default under the Lease or other obligations due under any other Lease Agreements or other financing agreements, or other indebtedness when due . . . ." Exhibits D-F, [1-5, 1-6, 1-7]. Likewise, a fourth Security Agreement [1-4] "secure[d] the payment and performance of each and every debt, liability and obligation of every type and description that Debtor may now **or at any time hereafter** owe to" Plaintiff, and defined a default as "fail[ing] to pay any or all" such obligations when due. Exhibit C, [1-4]. Therefore, Aaron Pope's failure to make the required payments to Plaintiff

upon sale of his four poultry flocks prior to filing a petition of bankruptcy constituted a default under the terms of his Poultry Proceeds (Security Agreement) [1-8] and at least four other Security Agreements [1-4, 1-5, 1-6, 1-7] with Plaintiff.

Each Security Agreement [1-4, 1-5, 1-6, 1-7] and the Poultry Proceeds (Security Agreement) [1-8] granted Plaintiff a security interest in the "products" and "proceeds" of the secured property – i.e., the products and proceeds of the poultry houses, compost drum, generator, land, and related equipment of Aaron Pope's poultry farming operation. Therefore, Plaintiff had a security interest in the proceeds from the sale of Aaron Pope's final four poultry flocks. In fact, Defendant does not dispute that Plaintiff had a perfected security interest in Aaron Pope's poultry houses and other farm equipment and, therefore, the proceeds and products therefrom.

Upon default, Aaron Pope's obligations to Defendant became immediately due and payable. Exhibit C [1-4], at 2; Exhibits D-F, [1-5, 1-6, 1-7]. Therefore, because the full proceeds of the sale of Aaron Pope's final four poultry flocks were collateral under the terms of the loan documents, as described above, Plaintiff was entitled to those proceeds in satisfaction of his obligations.

Next, the Court must determine whether Defendant knew of Plaintiff's right to the poultry flock proceeds, and whether his actions were in exclusion of Plaintiff's rights. In his deposition, Defendant admitted that he knew Aaron Pope owed money to Plaintiff, and that the debt was secured by the land, poultry houses, and equipment of his poultry farming operation. Exhibit B at 5, *Wells Fargo Fin. Leasing, Inc. v. Pope*, No. 2:15-CV-160-KS-MTP (S.D. Miss. Oct. 28, 2016), ECF No. 18-2. Defendant also

5

testified: "I didn't know anything about how they [Plaintiff] were getting paid, but I knew they were getting paid." *Id.* He testified that he did not know that Sanderson Farms was paying Plaintiff directly from flock proceeds. *Id.* at 12. But he knew that Aaron Pope had defaulted on his obligations. *Id.* at 5. When asked why he accepted Aaron Pope's transfer of the Sanderson Farms grower contract, Defendant testified that he intended to shield the poultry operation's assets from an individual named Linda Brock, who was influencing Aaron Pope. *Id.* at 9.

"While conversion requires an intentional act, . . . the required intent does not have to be the intent to be a wrongdoer," and "good faith is not necessarily an excuse." *Wallace v. United Miss. Bank*, 726 So. 2d 578, 589 (Miss. 1998). "The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* For example, "[a] purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property. A mistake of law is no defense." *Id.*

Here, Plaintiff has presented sufficient undisputed evidence to meet the knowledge/intent element of conversion. The evidence shows that Defendant intentionally accepted a transfer of the Sanderson Farms grower contract, which prevented Plaintiff from receiving its regularly scheduled payments under the Poultry Proceeds (Security Agreement) [1-8]. Likewise, it is undisputed that Defendant permitted his son, Aaron Pope, to receive all the proceeds from the first two poultry flocks. *See* Exhibit B [18-2], at 13. Defendant deposited the third and fourth Sanderson

Farms payments into his own bank account. *Id.* at 13-14. He later transferred some of the funds to his son, Aaron Pope, *id.* at 15, and used some of them to pay his son's other creditors. *Id.* at 15-17. These actions constitute intentional acts "to exercise a dominion or control over the goods which [are] in fact inconsistent with the plaintiff's rights." *Wallace*, 726 So. 2d at 589. Defendant acted intentionally, and his actions were in exclusion of Plaintiff's rights to the proceeds from the sale of the poultry flocks.[1] *First Bank v. E. Livestock Co.*, 837 F. Supp. 792, 793 (S.D. Miss. 1993) ("One who violates a valid security interest of a financial institution by not accounting to that financial institution for its security interest is subject to liability for conversion of the institution's funds.").

In response, Defendant argues that Plaintiff had no legal right to the proceeds of any flock grown by Pope Farms, Inc. – Defendant's business entity – because its loan agreements, leases, and security agreements were with Aaron Pope. But privity of contract is not a necessary element of conversion, and Defendant need not be in contract with Plaintiff to have converted funds to which Plaintiff was legally entitled. Moreover, the security agreements executed by Aaron Pope provided Plaintiff with a security interest in Aaron Pope's farming property and equipment and the proceeds

---

[1]The Court also notes that Defendant had constructive notice of Plaintiff's security interests in Aaron Pope's poultry farming equipment and the proceeds thereof because Plaintiff publicly filed Deeds of Trust [1-2, 1-3] and UCC Financing Statements [1-9, 1-10, 1-11, 1-12, 1-13]. *See Cmty. Trust Bank of Miss. v. First Nat'l Bank of Clarksdale*, 150 So. 3d 683, 691 (Miss. 2014); *Henderson v. Bank of Am., N.A.*, 510 B.R. 76, 97 (Bkr. S.D. Miss. 2014) ("[T]he mere recording of a deed of trust is constructive notice to strangers of the transaction.").

thereof, regardless of what corporate entity had a grower contract with Sanderson Farms.

For these reasons, the Court grants Plaintiff's Motion for Summary Judgment [18] as to its conversion claim against Defendant. The amount of the judgment shall be at least $70,160.00 – the total payments due to Plaintiff from each of the final four flocks. However, the Court reserves the right to enter judgment in an amount up to $284,918.62 – the full amount of cash proceeds – upon a showing by Plaintiff that it is entitled to such. Plaintiff's briefing on this issue was inadequate, but the Court can take up the issue by hearing or motion, as the parties would prefer. Plaintiff's security interest attached to the full amount of the proceeds, but Plaintiff has not directed the Court to any evidence showing Aaron Pope's total indebtedness at the time of default. If the debt was less than $284,918.62, then Plaintiff would not be entitled to the full proceeds.

## B.  *Negligence Counterclaim*

The four elements of negligence are well-established: 1) a duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2) a breach of the duty, a failure on the person's part to conform to the standard required; 3) a reasonably close causal connection between the conduct and the resulting injury; and 4) actual loss or damage resulting to the interest of another. *Weathersby Chevrolet Co. v. Redd Pest Control Co.*, 778 So. 2d 130, 133 (Miss. 2001). Among other things, Plaintiff argues that Defendant has not identified any legally cognizable duty which it owed him. In his response brief,

8

Defendant failed to address this issue – or any issue specifically related to his negligence counterclaim.

Defendant has the burden of proof on his counterclaims, and, therefore, in response to Plaintiff's motion alleging that there is no evidence to support his negligence counterclaim, Defendant "must point to evidence that would raise a genuine factual dispute as to a material element" of the claim. *Bacharach v. Suntrust Mortg.*, 827 F.3d 432, 434 (5th Cir. 2016). Defendant provided no evidence or argument with respect to any duty Plaintiff purportedly owed him to form the basis of his negligence counterclaim. Accordingly, the Court grants Plaintiff's motion for summary judgment as to the negligence counterclaim.

## C.    *Defamation*

The elements of a defamation claim are: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002).

Plaintiff argues that the alleged defamatory statements at issue are in connection with this judicial proceeding and, therefore, privileged. Defendant's briefing indicates that his defamation counterclaim does, in fact, arise from statements made by Plaintiff in this case. "[D]efamatory matter set forth in a judicial proceeding is absolutely privileged and no action will lie for libel and slander based on such defamatory matter if the matter is relevant or pertinent to the issues involved in the

case." *Ladner v. Arrington*, 374 So. 2d 831, 833 (Miss. 1979). Defendant admitted that he knew of no statements Plaintiff had made about him to any third party, and that he was not aware of any public statements other than this lawsuit. Exhibit B [18-2], at 24. Therefore, the Court grants Plaintiff's motion for summary judgment as to Defendant's defamation counterclaim.

**D.    *"Bad Faith Prosecution"***

Defendant asserted a counterclaim of "bad faith prosecution." There is no such cause of action under Mississippi law. To the extent Defendant intended to assert claims of abuse of process and malicious prosecution, the Court addresses them below.

**E.    *Abuse of Process***

The elements of abuse of process are: "(1) that the defendant made an illegal and improper use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted from the irregularity." *Williamson v. Keith*, 786 So. 2d 390, 394 (Miss. 2001). Plaintiff argues that Defendant has no evidence of "an ulterior motive or purpose" behind this litigation. *Id.*

Defendant has the burden of proof on his counterclaims, and, therefore, in response to Plaintiff's motion alleging that there is no evidence to support his negligence counterclaim, Defendant "must point to evidence that would raise a genuine factual dispute as to a material element" of the claim. *Bacharach*, 827 F.3d at 434. Defendant provided no evidence of an ulterior motive or purpose behind this litigation.

10

In his deposition, he claimed that he "[hadn't] done a thing in the world to Wells Fargo." Exhibit B [18-2], at 24. He speculated that Plaintiff was "using [him] as a vendetta against [his] son," because it was angry that Aaron Pope defaulted on his debts. *Id.* at 25. However, Defendant presented no evidence to support this speculation. Furthermore, the use of process in this case was both "warranted [and] authorized by the process," *Williamson*, 786 So. 2d at 394, insofar as the Court has granted Plaintiff's motion for summary judgment as to its conversion claim. The Court likewise grants Plaintiff's motion for summary judgment as to Defendant's abuse of process counterclaim.

## F.    *Malicious Prosecution*

The elements of malicious prosecution are: "(1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of." *Bearden v. Bellsouth Telcoms., Inc.*, 29 So. 3d 761, 764 (Miss. 2010). Among other things, Plaintiff argues that Defendant has no evidence of malice in instituting these proceedings, or that there is a want of probable cause.

Defendant has the burden of proof on his counterclaims, and, therefore, in response to Plaintiff's motion alleging that there is no evidence to support his negligence counterclaim, Defendant "must point to evidence that would raise a genuine factual dispute as to a material element" of the claim. *Bacharach*, 827 F.3d at 434.

11

Again, Defendant presented no evidence beyond his own unsupported speculation that Plaintiff instituted these proceedings maliciously. Furthermore, Plaintiff's probable cause for filing this suit is evident, insofar as the Court has granted summary judgment in its favor as to the conversion claim against Defendant. The Court also grants Plaintiff's motion for summary judgment as to Defendant's malicious prosecution counterclaim.

## IV. CONCLUSION

For the reasons provided above, the Court **grants** both Plaintiff's Motion for Summary Judgment [18] on its own conversion claim and its Motion for Summary Judgment [19] on Defendant's counterclaims. Defendant's counterclaims are dismissed with prejudice. Upon the conclusion of this matter, the Court will enter a final judgment in Plaintiff's favor as to its conversion claim.

SO ORDERED AND ADJUDGED, on this, the ___11th___ day of January, 2017.


___s/Keith Starrett_____
UNITED STATES DISTRICT JUDGE